PEDRO BERLINGERI MORALES, Appellant, *v.* THE REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. O-68-134.     Decided November 29, 1968.

*Jorge López Santiago* for appellant. The respondent Registrar appeared by brief.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On March 21, 1966 deed No. 174, executed on December 16, 1946 before notary Luis Domínguez Rovira, was presented for registration in the Registry of Property of Guayama, by virtue of which Federico F. Basora and his wife Eloísa Saldaña sold to appellant Pedro Berlingeri Morales a real property, consisting of a frame house situated in a lot "the remaining portion of which is, now, 48 feet front by 30 feet deep." On April 29, 1968 the Registrar denied the registration requested "on the ground that the property object of the sale was recorded in the name of Raúl Rodríguez López and his wife Mercedes Bachier, who are persons other than the vendor spouses, and, furthermore, the permit of the Planning Board approving the sale of the remaining portion of the property object of the sale is not attached."

First, it is necessary to recite the entry in the registry of the property in question. In its first entry it is described thus:

"URBAN: Zinc-roofed *frame house* seven meters twelve centimeters front by nine meters thirty-five centimeters deep, *on a lot forty-five meters front by thirty meters deep,* situated in Arroyo, ward of the East, containing another small tile-roofed frame house, nine meters front by three meters deep; bounded on the east by Rosario Egan's lot and the Nigua River; on the south by Adelaida Mari Agostini; on the north by the aforementioned Nigua River and the town wall; and on the west by the church plaza." The property was given number 162. (Italics ours.)

According to the thirteenth entry the Crédito y Ahorro Ponceño corporation (in whose favor the property was recorded) sold it, as described in the first, seventh, and eleventh

entries[1] by deed No. 11 executed on March 12, 1935 before notary Matías Pomales Díaz, to Federico F. Basora and his wife Eloísa Saldaña, it being recorded in the name of the latter spouses.

In the year 1937 Basora and his wife sold to Laura Bergodere widow of Nieves a foreign-wood *frame house situated on San Marcos Street in the municipality of Arroyo which is thirty-nine feet front by thirty-eight feet deep having an extension* which is eighteen feet front by twenty-five deep, *and which are located in a lot which is fifty-one feet front by one hundred twenty-five feet deep; said house and lot being bounded on the north and south and west by houses and lots property of the vendor,* Basora; and on the east by the street on which it is located. Said deed having been presented in the Registry of Property, the Registrar proceeded to record property No. 162 in its entirety which was formerly recorded in the name of Basora and his wife, now, with same number, in the name of Mrs. Bergodere widow of Nieves.

On December 16, 1946 the Basoras sold to Pedro Berlingeri Morales by virtue of the aforementioned deed No. 174 a one-story, zinc-roofed frame house, which is thirty-six feet front by thirty-five feet deep, having a frame addition constructed of the same materials, which is twenty-eight feet deep by eighteen feet wide, located in a lot the remaining portion of which is, at the present time, forty-eight feet front and thirty feet deep, located in the East Ward in the urban zone in Arroyo, Puerto Rico, said house and lot being bounded at the present time on the right-hand side, entering, that is, on the south, by the house of Laura Bergodere widow of Nieves, formerly Adelaida Mari Agostini; on the left,

---

[1] Referring to the house the seventh entry states that it "is, at the present time, twelve meters front." The eleventh entry states that in addition to the house in the lot, there existed six other frame houses, which have been reduced nowadays to two houses more, there existing, therefore, three houses in said lot.

that is, the north, by the town wall and the river; on the front, west, by the Church plaza and the street which separates it from the latter; on the rear side, east, by the Nigua River. Said deed No. 174 stated that the aforementioned property was acquired by the Basoras by purchase from the Banco Crédito y Ahorro Ponceño, the lot having an area of one thousand three hundred fifty square meters with several constructions among which was the afore-described house.

On July 9, 1964 said deed No. 174 was presented in the Registry of Property of Guayama. Apparently, appellant did not furnish the Registrar with certain documents requested by the latter, because at the foot of the instrument presented, there appears the following marginal note signed by the Registrar.

"This document was returned without making any entry, because the person who submitted it desisted from its recording. Guayama, March 14, 1966."

In the meantime, Laura Bergodere widow of Nieves died on December 25, 1952 and the property recorded in her favor passed, by inheritance, to her daughter, María del Rosario Ramona Paula Nieves Bergodere. It is thus indicated in the 15th entry of March 8, 1967. On March 30, 1957 the heiress sold said property to Luisa Quiñones, and the 16th entry of March 8, 1967 was entered in favor of the latter. On June 22, 1959 Luisa Quiñones sold the property to Raúl Rodríguez López and his wife Mercedes Bachier, it being recorded in their favor by virtue of the 17th entry of March 8, 1967.

On March 21, 1966 Pedro Berlingeri again presented deed No. 174 in the Registry. The record was denied because (1) said property having an area of 1350 square meters with several houses was sold by the Basoras to Mrs. Bergodere widow of Nieves, and such sale was recorded, but not that of the house and lot mentioned in deed No. 174, and the same appears recorded in the name of Raúl Rodríguez López and

694

his wife, who are persons other than the vendors surnamed Basora-Saldaña; and (2) the permit of the Planning Board approving the sale of said remaining portion was not attached.

■ 1. For the purpose of passing upon an instrument subject to record in the Registry of Property[2] the Registrar must abide by the disclosures of the instruments presented bearing in mind the entries in the Registry referring to the same property. *Esso Standard Oil Co.* v. *Registrar*, 88 P.R.R. 296 (1963); José Sabater, *Práctica Civil—Ley Hipotecaria* 406 (1945); II Morell y Terry, *Comentarios a la Legislación Hipotecaria* 259 (1927 ed.).[3]

---

[2] Article 18 of the Mortgage Law—30 L.P.R.A. § 43—provides that:

"Registrars shall, under their responsibility, determine the legality of the instruments under which record is requested, and the capacity of the parties thereto, upon the facts that appear from said instruments themselves.

"They shall likewise, under their responsibility, pass on all documents issued by judicial authorities for the sole purpose of admitting, suspending or refusing their admission to record or entry.

"The only remedies against a decision suspending or refusing to admit to record or to enter a cautionary notice shall be such as are provided for in this subtitle, and judges and courts can not otherwise compel registrars to make records or entries by virtue of judicial documents."

[3] Roca Sastre, in his work II *Derecho Hipotecario* 261 *et seq.* (1968), elaborates on this question and he explains that the Registrar, upon passing on the legality of instruments, must take into consideration all the effective entries relating to the property mentioned in the title whose legality is to be determined; that is, those which, having validity, compose or integrate the content of the folio or particular record of the property in question. The purpose of this rule, as Roca Sastre indicates, is that on presentation of a document, the Registrar, in order to pass on the legality thereof, must check it with the Registry in case any obstacle arises from the examination thereof which might preclude its registration. The main obstacles which may arise from the examination of the Registry in the exercise of the Registrar's function of passing on the legality of instruments are:

(1) *The nonrecording* of the property object of the title presented, where the latter appears to be nonrecordable.

(2) The fact that the title submitted refers to a property which although it appears recorded, *it is recorded in a different registry.*

(3) The circumstance that the property or property right of the title submitted is recorded *in the name of a person other than the one* appearing

Appellant argues that the Registrar "was completely mistaken in concluding that the whole 'property was recorded in the name of a person other than the vendors to appellant' "; that if he had examined the entries and considered what appears therefrom he should have concluded that "González [*sic*] López" and his wife are the owners of only a portion of the property and Basora and his wife are the owners of the remaining portion, which they sold to Berlingeri; that in the 14th entry error was committed in failing to make the entry of the new property of 51 by 121 feet, which Basora sold to Laura Bergodere; that the Registrar persisted in said error, which error he apparently acknowledges in his note denying registration; that notwithstanding the prevailing doctrine on this matter, that is, the one which we sanctioned in *Esso Standard Oil Co.* v. *Registrar, supra,* the Registrar cannot attribute more validity to an entry in the Registry "than what appears from the entry itself," that if the Registrar "was in doubt as to whether the error in the record created a state of law which precluded the record of the sale of the remaining portion of said property to appellant, he could have sought the correction of the entry when he had the opportunity to do so, that is, when he recorded Laura Bergodere's declaration of heirship. On said occasion it was incumbent on the Registrar, after examining the deed which caused the 14th entry, to request the consent of said heirs to make the correction, pursuant to arts. 255 to 263 of the

in the deed as the grantor or in whose name the act of alienation or encumbrance is executed. It is thus required by the principle of successive performances regulated by art. 20 of the Mortgage Law.

(4) Lack of *identity* of the grantor according to the title submitted, or of the property or property right object of the same, in relation to what appears of record.

(5) The marginal note of any effective *prohibition to alienate* precluding the alienation and encumbrance object of the title submitted.

See, also, Morell y Terry, *op. cit.* at p. 259; II Galindo and Escosura, *Comentarios a la Legislación Hipotecaria* 19 *et seq.* (1908); José Sabater, *op. cit.* at p. 407.

Mortgage Law, 30 L.P.R.A. §§ 432 to 440 and in the event the latter refused to give their consent, he could have proceeded, pursuant to art. 297 of the Mortgage Regulations, to summon all the interested persons pursuant to arts. 293 to 295 of the Mortgage Law Regulations; 30 L.P.R.A. §§ 1284 to 1286 and 1288."

■■ Contrary to what appellant indicates, the Registrar could not request the correction of the 14th entry, since by virtue of said entry and as a result of successive conveyances, the property is actually recorded in favor of a third person other than the vendor. Furthermore, only a portion of the property having been sold, and its sale, in its entirety, having been mistakenly recorded, pursuant to art. 258 of the Mortgage Law, 30 L.P.R.A. § 435, said error cannot be corrected, Galindo and Escosura, *op. cit.* at p. 180, but the proper action is that the prejudiced party request from the corresponding court the proper remedy.

Galindo and Escosura maintain that when said error is committed *and the property has not been object of successive conveyances*, although said error cannot be corrected, "the purchaser may present an authentic document stating his consent to the cancellation of the entry recorded in his favor, and after the cancellation is verified, since the same person who executed the deed of sale will appear in the record as owner, the same deed may be recorded again, and the truth will be reestablished." José Sabater, *op. cit.* at p. 752 adds, "that when no prejudice is caused to a third party or to any interested party, the error may be easily corrected provided there is agreement between the parties; but if the error may cause prejudice in any manner whatsoever, neither the Registrar nor the parties may correct it and it is necessary to resort to the court under whose protection the records and cautionary notices made in the Registry of Property remain." See also, 4 Morell y Terry, *op. cit.* at p. 704.

From the foregoing it appears that the 14th entry could

not be corrected by the Registrar and that he cannot seek its correction. The parties cannot correct it either because the whole property in question being recorded in favor of Raúl Rodríguez López and his wife, a state of law had been created, and only with the intervention of Rodríguez López and his wife may said state of law be altered. *Roman Catholic Church* v. *Registrar*, 59 P.R.R. 109 (1941); *García* v. *Registrar of Ponce*, 33 P.R.R. 911 (1925); *Dávila* v. *Registrar of Caguas*, 28 P.R.R. 183 (1920); *Bolívar et al.* v. *The Registrar of Property*, 13 P.R.R. 362 (1907).

2. It is pointed out that the Registrar erred in refusing to record the transaction object of said deed No. 174 because "the permit of the Planning Board approving the sale of the remaining portion of the property object of the sale is not attached."

In *Rodríguez* v. *Registrar*, 66 P.R.R. 727 (1946), we said that where several segregations *were made and recorded* prior to effective date of the Subdivision Regulations, the sale of the remaining portion of the principal property made subsequent to said date must be recorded, it being unnecessary to request any permission therefore from the Planning Board. In *Mari* v. *Registrar*, 72 P.R.R. 830, 832 (1951), a deed for the correction of the area and description of a property was presented for registration, which, according to the registry had an area of 300 square meters, but according to the survey certificate it had only 189.77 square meters. We upheld the refusal to record the correction of area, which record was requested without attaching the corresponding plat approved by the Planning Board or the certificate establishing that the Board dispensed with its presentation. To that effect we said that from the difference between the recorded area and the survey "it could be logically inferred therefrom that there has been a segregation and that such segregation might have been made subsequent to September 5, 1944, the effective date of the Subdivision Regulations. . . . Had the

segregation been made prior to the effectiveness of the Subdivision Regulations, the intervention of the Planning Board would, of course, be unnecessary. . . . But in that case the corresponding deed of segregation showing the date on which the segregation was made should have been also presented."

In the case at bar appellant sought to record the remaining portion of a property, there failing to appear from the Registry any record of the previous segregations thereof. Therefore the rule established in *Mari, supra,* is applicable.

However, in the event that by the proper judicial proceeding the alleged error is corrected and by virtue thereof record of the segregations of the property in question is requested, the necessity of the previous permission of the Planning Board will depend, as in *Rodríguez, supra,* on the date on which said segregations were made. Of course, the segregations having been duly recorded, the record of the sale of the remaining portion may be executed without the intervention of the Planning Board.

In view of the foregoing, the note appealed from will be affirmed.